IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 17-182 |
| MIGUEL ANGEL BANDA CAVAZOS | : | |
| a/k/a "Miguel Banda" | | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The defendant comes before the Court having illegally entered the United States three separate times, and being deported twice before. The second time the defendant was deported, it was subsequent to his conviction for possession with intent to distribute more than five but less than fifty pounds of marijuana. The defendant has never sought permission to apply for re-entry into the United States. Rather, he intentionally re-entered the United States without permission almost immediately after deportation. The defendant's refusal to follow the law warrants a guidelines sentence.

I. **BACKGROUND**

On December 29, 2008, ICE officials encountered the defendant and served him with a Notice to Appear before an Immigration Judge. Thereafter, on January 13, 2009, an Immigration Judge in York, Pennsylvania ordered the defendant deported to Mexico. The defendant was removed afoot from the United States to Mexico via Laredo, Texas on February 23, 2009.

Prior to this removal, immigration officials executed a Form I-205, which is a Warrant of Deportation and Removal. This form contains the defendant's name, signature,

1

photograph, Alien Number and the print from his right index finger. A Form I-205 was signed by the official who fingerprinted the defendant and who witnessed the defendant's removal.

Prior to deportation, the defendant was also served with an I-204 Form, which is a warning to an alien ordered removed or deported. This form is dated January 13, 2009. This form warned the defendant that he was prohibited from: (1) entering; (2) attempting to enter; or (3) being in the United States for a period of ten years following his removal. It also advised the defendant that he was required to request and obtain permission from the Attorney General to reapply for admission to the United States. Finally, the defendant was warned that illegally entering the United States is a crime, pursuant to Title 8, United States Code, Section 1326. The Form I-294 was signed by the officer who served the warrant.

The second time the defendant was found in the United States was after he was arrested by Texas police and charged with possession of marijuana in the amount of fifty pounds or less but more than five pounds. The defendant pled guilty to this charge on May 14, 2012. The defendant was encountered by ICE on February 7, 2012. The defendant was interviewed by ICE agents, during which he admitted that he was a citizen and national of Mexico. The defendant told agents that he entered the United States illegally by wading across the Rio Grande River near Laredo, Texas in March 2009. He also admitted that he had no documents permitting him to legally reside in the United States.

In early September 2012, Mr. Banda-Cavazos was removed afoot from the United States to Mexico via Brownsville, Texas, after agents executed and administered Forms I-205 and I-294.

Pertaining to the instant offense, on November 26, 2016, ICE received notice that

the defendant had been arrested. Special Agent Gregory Marino interviewed the defendant during which the defendant admitted that he was a citizen of Mexico. The defendant also admitted that he last entered the United States in 2014 by illegally walking into Texas. The defendant also admitted that he had been removed on the two prior occasions outlined herein. The defendant also admitted that he did not have permission to reenter the United States.

SENTENCING CALCULATION.

    A.    <u>Sentencing Guidelines Calculation</u>.

As noted in the Pre-Sentence Report, the defendant's base offense level is an 8 pursuant to USSG § 2L1.2(a). There is a four-point enhancement because the defendant was previously convicted of "any other felony offense." PSR ¶ 21. The defendant received two-level reduction for acceptance of responsibility. PSR ¶ 27.

Accordingly, the total offense level is 10. PSR ¶ 28. With a Criminal History Category III, the defendant's advisory guideline range is 10-16 months' incarceration.

III.    <u>ANALYSIS</u>.

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that the most appropriate sentence is one at the top of the advisory guideline range of 12-18 months.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." <u>Gall v. United States</u>, 128 S. Ct. 586, 596 (2007). Thus, the Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

This Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).[1]

CONSIDERATION OF 3553(a) FACTORS

The case before the Court represents the third time that the defendant has been found living illegally in the United States. The defendant failed to abide by the rules of his previous deportations. The defendant committed a significant drug crime after his first deportation. Moreover, the defendant illegally re-entered the United States while on probation

---

[1] Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the "not greater than necessary" language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'" United States v. Dragon, 471 F.3d 501, 506 (3d Cir. 2006) (quoting United States v. Navedo-Concepcion, 450 F.3d 54, 58 (1st Cir. 2006)).

4

for his crime. The defendant's actions demonstrate that he has no respect for the law, or the justice system. Indeed, the defendant admitted that he came back to the United States within a month of his first deportation and less than two years after his second deportation.

It is clear, therefore, that the recommended term of imprisonment is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2).

The need to avoid unwarranted sentencing disparities also favors a guideline sentence. To impose a sentence outside the guidelines in this case would result in an unwarranted disparity among similarly situated defendants who have similar criminal histories.

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D). Also, restitution is not an issue in this case. § 3553(a)(7).

THE LAW REGARDING THE TIME SERVED IN CUSTODY

The defendant seeks what he describes as a "modest" downward variance because of time spent in custody. This description, however, is based on an incorrect reading of the law. Although the defendant has been in some form of local, ICE or federal custody since November 2016, the defendant has only been in custody for purposes of sentencing since March 2, 2016, which is the date that ICE referred the defendant to the United States Attorney's Office for federal prosecution.[2]

---

[2] Of note, the Federal Defenders Office and the United States Attorney's Office has agreed that the United States Attorney's Office will contact the Bureau of Prisons after sentencing to advise the BOP of the date of referral for criminal prosecution. Without this information, the BOP views the date of entry into U.S. Marshal's custody, here

5

At issue in this case is the computation of federal prior custody credit. Prior custody credit is governed by 18 U.S.C. § 3585(b). This statute provides:

> **Credit for prior custody.**-A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences-
>
> > (1) *as a result of the offense for which the sentence was imposed*; or
> >
> > (2) as a result of any other *charge* for which the defendant was *arrested* after the commission of the offense for which the sentence was imposed;
>
> That has not been credited against another sentence.

18 U.S.C. § 3585(b) (emphasis added).

In the defendant's sentencing memorandum, he asserts he is entitled to prior custody credit for the time he served in Northampton County where he was charged with arson and criminal mischief. As noted in the PSR, this arrest was related to a 2001 offense. The charges were ultimately nolle prossed. See PSR ¶ 36. The defendant's assertion is misplaced. The law clearly states that credit can only be given to detention, which is the result of an offense for which the sentence was imposed. Here, the defendant's arrest for a 2001 arson is completely irrelevant to the defendant's current criminal conviction for illegal re-entry after deportation. Moreover, 18 U.S.C. § 3585(b), subsection (2) is irrelevant as there has been no arrest or charge subsequent to the case before this Court.

In the defendant's sentencing memorandum, he contends he is entitled to prior

---

April 10, 2017, as the first day of custody for purposes of crediting time served, and calculating his sentence for which BOP is solely responsible.

custody credit for the time he served in ICE detention prior to the contemplation of federal criminal charges, for a period spanning December 1, 2016 (the date ICE lodged a detainer), through March 1, 2017 (the day before ICE referred Petitioner's case to the United States Attorney's Office for possible criminal prosecution). This issue is governed by 18 U.S.C. § 3585(b) and Bureau of Prisons Program Statement 5880.28, Sentence Computation Manual (CCA of 1984).

The defendant's argument is incorrect. It is well settled that ICE deportation proceedings are civil in nature. INS v. Lopez-Mendoza, 468 U.S. 1032, 1042-43, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984); United States v. Garcia-Martinez, 254 F.3d 16 (1st Cir. 2001); Ramirez-Osorio v. INS, 745 F.2d 937 (5th Cir. 1984), *rehearing denied*, 751 F.2d 383 (5th Cir. 1984); Shoatee v. INS, 704 F.2d 1079 (9th Cir. 1983); Cabral-Avila v. INS, 589 F.2d 957 (9th Cir. 1978), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1245, 59 L.Ed.2d 472 (1979). Thus, time served solely while awaiting civil deportation hearings cannot be time served under the conditions of Section 3585(b), which contemplate criminal charges. 18 U.S.C. § 3585(b).

Bureau of Prisons Program Statement 5880.28, Sentence Computation Manual, provides that "official detention" under 3585(b) does not include time spent in ICE "civil custody" pending a final determination of deportability. See Attachment A, Program Statement 5880.28, at p. 15A.[3] The relevant portion of Program Statement 5880.28, provides:

---

[3] The Supreme Court has recognized the Congressional delegation of sentence computation responsibility and has given deference to the Bureau of Prisons' interpretation of sentence administration statutes noting that the Bureau of Prisons is the agency charged with administering 8 U.S.C. § 3585(b). See Lopez v. Davis, 531 U.S. 230, 240, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001); Reno v. Koray, 515 U.S. 60, 60-61, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995). Also, it is well settled that the Bureau's interpretation of 18 U.S.C. § 3585(b), as set forth in Program Statement 5880.28, is entitled to some deference. Reno v. Koray, 515 U.S. at 61.

Official detention does not include time spent in the custody of the U.S. Immigration & Naturalization Service (INS) under the provisions of 8 U.S.C. § 1252 pending a final determination of deportability. An inmate being held by INS pending a civil deportation determination is not being held in "official detention" pending criminal charges.

As stated in footnote 2, BOP will consider crediting time spent in immigration custody in illegal reentry cases from the date that the case is referred to the U.S. Attorney's Office. Accordingly, with BOP credit for time spent in immigration custody from the date of referral, the proper computation for time-served in this case is from March 2, 2017. Accordingly, the defendant will have served approximately six month incarceration at the time of sentencing. The defendant's request for time-served, therefore, is more than a modest variance. According to the PSR, the defendant's physical condition does "not appear to present an issue for sentencing, institutional classification, or community supervision." See PSR ¶ 48. Accordingly, in light of the defendant's recidivism and criminal history, the government requests a guideline sentence.

SUPERVISED RELEASE

US Sentencing Guidelines, Section 5D1.1(c) provides that a court should not ordinarily impose supervised release in a case in which supervised release is not required and the defendant is a deportable alien who is likely to be deported after release. However, Application note 5 states that the Court should consider imposing a term of supervised release if the Court determines it would prove an added measure of deterrence and protection based on the facts and circumstances of the case. See PSR ¶ 66, n. 5; USSG 5D1.1(c), note 5; see also United States v. Azcona-Polanco, 2017 WL 3184723 *3 (3d. Cir. July 27, 2017). Here, the defendant was deported on two prior occasions. The defendant committed a significant drug crime after his first deportation. The defendant re-entered the United States while serving probation for his drug

conviction. Moreover, the defendant has re-entered the United States only a short time after his prior deportations. Accordingly, this case warrants a term of supervised release as an added deterrent and for protection of the public from further crimes.

**IV. CONCLUSION**

Therefore, in sum, all of the appropriate considerations of sentencing favor the imposition of a guideline sentence.

Respectfully submitted,

LOUIS D. LAPPEN
Acting United States Attorney

*/s/ Alicia M. Freind*
ALICIA M. FREIND
Assistant United States Attorney

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the within Government's Sentencing Memorandum has been served this date by electronic filing and/or first class mail to:

Nancy MacEoin, Esq.
Federal Defender's Association
The Curtis Center - Suite 540 West
Independence Square West
Philadelphia, PA 19106

ALICIA M. FREIND
Assistant United States Attorney

Date: September 7, 2017

# ATTACHMENT A

defendant returns to the community **without** being placed on bail or on "own personal recognizance," then that defendant is not entitled to that day in court as a day in "official detention" on a subsequent sentence even if required to report to the U.S. Marshals' Service for processing (fingerprinting, photographing, etc.). If the defendant is released on bail or on "own personal recognizance" then that day is treated as a day in official detention and shall be awarded as a day of prior custody time credit. *

Official detention does not include time spent in the custody of the U.S. Immigration and Naturalization Service (INS) under the provisions of 8 U.S.C. § 1252 pending a final determination of deportability. An inmate being held by <u>INS pending a civil deportation determination is not being held in "official detention" pending criminal charges</u>. (See <u>Ramirez-Osorio v. INS</u>, 745 F.2d 937, rehearing denied 751 F.2d 383 (5thCir. 1984); <u>Shoaee v. INS</u>, 704 F.2d 1079 (9th Cir. 1983); and Cabral-Avila v. INS, 589 F.2d 957 (9th Cir. 1978), cert. denied 440 U.S. 920, 99 S.Ct 1245, 59 L.Ed2d 472 (1979.)

A sentence imposed by a court for **"Time Served,"** means that all time spent in official detention (prior custody time), as a result of the offense for which sentence was imposed, is included in the "Time Served" sentence which the court imposed and cannot be awarded to any other sentence.

Time spent serving a **civil contempt** sentence prior to trial and/or sentencing **does not** constitute presentence time credit toward the sentence that is eventually imposed.